**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| GODO KAISHA IP BRIDGE 1,<br><br>*Plaintiff*,<br><br>v.<br><br>TELEFONAKTIEBOLAGET LM ERICSSON, ERICSSON, INC.,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:21-CV-00213-JRG (LEAD CASE) |
| v.<br><br>NOKIA CORPORATION, NOKIA SOLUTIONS AND NETWORK OY, NOKIA OF AMERICA CORPORATION,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:21-CV-00215-JRG (MEMBER CASE) |

**ORDER**

Before the Court is Defendant Ericsson Inc.'s ("Ericsson") Motion to Disqualify IP Bridge's Technical Expert Previously Retained by Ericsson in an Ongoing Case Involving the Same Accused Products (the "Motion"). (Dkt. No. 52). Having considered the Motion, the related briefing, and the applicable law, the Court finds that the Motion should be **GRANTED**.

## I. BACKGROUND

Plaintiff Godo Kaisha IP Bridge 1 ("IP Bridge") filed its Complaint on June 11, 2021, alleging that Ericsson infringes U.S. Patent Nos. 7,372,909 ("the '909 Patent"); 8,787,275 ("the '275 Patent"); 8,085,724 ("the '724 Patent"); 8,077,594 ("the '594 Patent"); 8,385,239 ("the '239 Patent"); 8,526,546 ("the '546 Patent"); and 9,137,000 ("the '000 Patent") (collectively, the "Asserted Patents"). (Dkt. No. 1). The Asserted Patents generally involve data transmission in

communication networks related to base stations. (*See, e.g.*, *id.* at ¶¶ 39, 46, 49, 54, 62). IP Bridge accuses Ericsson's LTE and 5G base stations (the "Accused Products") of infringing the Asserted Patents. (*See e.g.*, *id.* at ¶¶ 84, 97, 111).

On October 27, 2021, IP Bridge notified Ericsson that it intended to disclose "Protected Material" as defined in the Protective Order in this case to Dr. Robert Akl, as well as two other experts. (Dkt. No. 52-7 at 5; Dkt. No. 55-2 at ¶ 7). On October 29, 2021, Ericsson objected to the disclosure of Protected Material to Dr. Akl asserting that this Court had previously disqualified Dr. Akl in a matter against Ericsson involving the same technology and Accused Products. (Dkt. No. 52-7 at 4); *see also Sol IP, LLC v. AT&T Mobility LLC*, Case No. 2:18-cv-00526, 2019 WL 6615465, at *1–2 (E.D. Tex. Dec. 5, 2019) (noting that "Dr. Akl's extensive work for Ericsson, on the same accused products as this case, on patents rooted in very closely related technology, and so close in time that some of it is still ongoing, makes him off limits to Plaintiff").

One week later, on November 5, 2021, IP Bridge responded that it disagreed with Ericsson's objection, requested copies of the sealed briefing regarding Dr. Akl filed in the *Sol IP* case, and offered to meet and confer on November 8th or 9th of 2021. (Dkt. No. 52-7 at 4). From November 8, 2021 through November 15, 2021, counsel for Ericsson contacted former counsel for *Sol IP* to ensure that the requested briefing contained no confidential *Sol IP* information and could be disclosed to IP Bridge. (*See* Dkt. No. 52-8). On November 15, 2021, Ericsson sent the requested sealed briefing to IP Bridge. (Dkt. No. 52-9 at 2). The following day, notwithstanding its request that Ericsson provide it the *Sol IP* briefing, IP Bridge asserted that Ericsson had waived its objection to Dr. Akl under the Protective Order because Ericsson did not file a motion within fifteen days of first notifying IP Bridge of its objection. (Dkt. No. 52-7 at 2–3). The parties attempted to meet and confer, IP Bridge reaffirmed its position that Ericsson's objection was

waived, and Ericsson then filed the instant Motion on November 22, 2021. (Dkt. No. 55 at 6; Dkt. No. 52).

## II. LEGAL STANDARD

Federal courts have the inherent power to disqualify experts. *Koch Refining Company v. Boudreaux*, 85 F.3d 1178, 1181 (5th Cir. 1996). In disqualification cases, other than those in which the expert clearly switched sides, the Fifth Circuit has articulated a two-part test:

> First, was it objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed?
>
> Second, was any confidential or privileged information disclosed by the first party to the expert?

*Id.* Only if the answers to both questions are affirmative should the witness be disqualified. *Id.* In reaching a decision, the Fifth Circuit has stated that courts should also consider whether the public interest weighs in favor of disqualifying the expert. *Id.* The party seeking disqualification bears the burden of proving that disqualification is warranted. *Id.* In patent cases, the law of the regional circuit governs the issue of disqualification of an expert witness. *See In re Pioneer Hi–Bred Int'l, Inc.*, 238 F.3d 1370, 1374 (Fed. Cir. 2001).

## III. DISCUSSION

Ericsson argues that Dr. Akl spent hundreds of hours working with Ericsson reviewing confidential and privileged information related to the same products and standards at issue in this case and must be disqualified just as he was in *Sol IP*. (Dkt. No. 52 at 6); *see also Sol IP*, 2019 WL 6615465, at *1–2. IP Bridge responds that Ericsson has waived its objection to Dr. Akl and—even if not waived—that Ericsson's objection should be denied because Dr. Akl was adverse to Ericsson on cases since *Sol IP* and has thus acquired independent knowledge of Ericsson's confidential information. (Dkt. No. 55 at 8–9). For the reasons stated below, the Court finds that

Ericsson has not waived its objection and that Ericsson has met its burden to show that disqualification of Dr. Akl is warranted in the present case.

### A. Ericsson did not Waive its Objection

IP Bridge argues that the Court need not reach the merits of Ericsson's objection because Ericsson did not file the instant Motion within the deadline set out in this case's Protective Order. (*Id.* at 8). The Protective Order allows a party to object to the disclosure of Protected Material to any outside consultant or expert. (Dkt. No. 55-2 at ¶ 7). After such an objection:

> [t]he Parties agree to promptly confer and *use good faith* to resolve any such objection. *If the Parties are unable to resolve any objection*, the objecting Party may file a motion with the Court within fifteen (15) days of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure.

(*Id.*) (emphasis added). IP Bridge asserts that the fifteen-day window begins on the date that a party initially raised its objection. IP Bridge further argues that this language provides no exception for a party taking time to provide requested materials to the other side and no exception for a party who fails to meet and confer within the fifteen-day period. (Dkt. No. 55 at 8–9). As a result, IP Bridge asserts that Ericsson has waived its objection by filing the instant Motion twenty-four days after first raising its objection and it further notes that it did not agree to a nine-day extension as contemplated by the Protective Order. (*Id.*).

Ericsson responds that it was actively working in good-faith to resolve the objection as required by the Protective Order and asserts that the fifteen-day window does not begin until the parties are "unable to resolve any objection." (Dkt. No. 52 at 10–11). Ericsson notes that IP Bridge waited seven days to respond to its objection and specifically requested sealed documents from Ericsson in its response. (Dkt. No. 52-7 at 4). Further, Ericsson notes that it immediately provided the requested briefing to IP Bridge upon receiving confirmation that it contained no confidential

information of *Sol IP*, and only then did it learn that the objection was "unable to [be] resolve[d]." (Dkt. No. 52-9 at 2; Dkt. No. 55-2 at ¶ 7). Accordingly, Ericsson argues that IP Bridge's refusal to attempt to resolve the issue triggered the start of the fifteen-day window or alternatively that IP Bridge's failure to agree to a nine-day extension of the filing date conflicts with the "good faith" requirements of the Protective Order.

The Court finds that Ericsson acted diligently in pursuing its objection and attempted to resolve the objection in good faith. *See Mobile Telecomms. Techs. LLC v. LG Elecs. Mobilecomm U.S.A., Inc.*, Case No. 2:13-cv-947-JRG-RSP, 2015 WL 11117313, at *1 (E.D. Tex. July 25, 2015) (noting that the "Defendant objected within days of learning of [the expert's] involvement in [the] case"). While IP Bridge asserts that the fifteen-day window runs from the time the objection is first raised, the Court notes that "[t]he notice" referred to in the Protective Order is not expressly defined as the initial objection. (*See* Dkt. No. 55-2 at ¶ 7). Rather, "[t]he notice" follows the event that "[t]he Parties are unable to resolve any objection." (*Id.*). Accordingly, the Court declines to find waiver where, as here, less than fifteen days transpired from when it became reasonably apparent to Ericsson that the matter could not be resolved and the filing of this Motion.

**B. Whether IP Bridge's Technical Expert Should be Disqualified**

Having found that Ericsson has not waived its objection, the Court proceeds to consider the merits of Ericsson's Motion.

*1. Whether a Confidential Relationship Existed*

Based on the record before it, the Court finds that a confidential relationship existed between Ericsson and Dr. Akl. It is undisputed that Ericsson retained Dr. Akl to work on a series of cases in the District of Minnesota "to develop non-infringement, non-infringing alternative, and invalidity positions" related to Ericsson's accused LTE base stations against patents rooted in very

closely related technology to that at issue in this case.[1] (Dkt. No. 52 at 6; Dkt. No. 52-1 at ¶¶ 5, 7). Just as in *Sol IP*, Dr. Akl "has billed Ericsson . . . [for previous work] defending the same accused Ericsson base stations against patent infringement claims related to the LTE standard, just as IP Bridge brings here." (Dkt. No. 52 at 7). More specifically, Dr. Akl received over $150,000.00 in fees for his consultation in the *Minnesota* cases. (Dkt. No. 52-1 at ¶ 6). The confidential relationship is further demonstrated by the consulting agreement executed between Ericsson and Dr. Akl under which such fees were paid. (Dkt. No. 52-5). Accordingly, the Court finds that a confidential relationship existed and was well established between Ericsson and Dr. Akl. Such relationship went well beyond "a simple consultation." *See Mobile Telecomms.*, 2015 WL 11117313, at *1.

*2. Whether Confidential Information was Received by the Expert*

Next, the Court finds that Dr. Akl previously received Ericsson's confidential information. First, the Court notes the close overlap in the subject matter between the Asserted Patents in the instant case and the patents-in-suit in the earlier filed *Minnesota* cases. Three of the five patents in the *Minnesota* cases are "directed to the ways in which reference signals (i.e., 'training symbols') are mapped." (Dkt. No. 52 at 8); *compare Univ. of Minn. v. AT&T Mobility LLC*, No. 14-cv-4666 JRT-TNL, Dkt. No. 212 at 2, 8, 11 (noting that the "patents disclose techniques that improve both the speed and the reliability of the radio link between the base station and mobile device" in embodiments utilizing "Orthogonal Frequency Division Multiplexing (OFDM)")*, with* (Dkt. No. 69 at 2) (noting that the '909 Patent is "generally directed to an OFDM ("orthogonal frequency

[1] *See Regents of the University of Minnesota v. AT&T Mobility LLC et al.*, No. 0:14-cv-04666-JRT-TNL (D. Minn); *Regents of the University of Minnesota v. Sprint Spectrum L.P. et al.*, No. 0:14-cv-04669-JRT-TNL (D. Minn); *Regents of the University of Minnesota v. T-Mobile USA, Inc. et al.*, No. 0: 14-cv-04671-JRT-TNL (D. Minn), and *Regents of the University of Minnesota v. Cellco Partnership d/b/a Verizon Wireless et al.*, 0:14-cv-04672-JRT-TNL (D. Minn) (collectively, the "*Minnesota* cases").

division multiplexed") multicarrier communications scheme that allows switching rapidly between the control channel and a data channel to improve the speed and efficiency of the system). During the *Minnesota* cases, Dr. Akl met with Ericsson's engineers and analyzed the products, standards, and source code that closely relates to the technology at issue in this case. (Dkt. No. 52-1 at ¶ 7). Accordingly, the Court finds that Dr. Akl received Ericsson's confidential technical information.

In additional to confidential technical information, Dr. Akl participated in "numerous teleconferences with Ericsson attorneys in which litigation strategy, attorney work product, and other privileged information was freely discussed." (*Id.*). Participating in meetings with Ericsson's counsel—the same lawyers defending Ericsson in this case—and discussing "non-infringement, non-infringing alternative, and invalidity positions" regarding closely related technology for the same Accused Products raises the danger that Dr. Akl may, even inadvertently, utilize confidential information previously learned from Ericsson in the instant case. (*Id.*). Given the similarity between the claims at issue in the instant case and the *Minnesota cases* and the overlap of Accused Products, the Court concludes that Dr. Akl received insight into Ericsson's confidential and privileged litigation strategy relevant to the issues in this case.

*3. Public Interest*

Rather than argue that no confidential relationship existed or that no confidential information was disclosed to Dr. Akl, IP Bridge argues that no protective purpose is served by disqualifying Dr. Akl because (1) he was discharged from the *Minnesota* cases in 2017 and (2) he has since independently acquired knowledge of Ericsson's confidential information related to LTE base station technology. First, IP Bridge notes that the agreement between Ericsson and Dr. Akl stated that it "would expire when [Dr. Akl] ha[d] completed all work requested of him pursuant to the Agreement," and on May 22, 2017, Ericsson informed Dr. Akl that he had no further

outstanding work on the matter. (Dkt. No. 55-3 at ¶ 4). Second, IP Bridge argues that Dr. Akl has recently been retained as an expert adverse to Ericsson in three cases involving Uniloc and seven petitions for *inter partes* review ("IPR") involving Samsung that relate to Ericsson's LTE base stations. (Dkt. No. 55 at 3–5). IP Bridge asserts that Ericsson cannot object to Dr. Akl's participation in this case because Ericsson failed to object to Dr. Akl's participation in the cases involving Uniloc in 2019 and petitions for IPR involving Samsung in 2020. (*Id.* at 11–12; Dkt. No. 55-3 at ¶¶ 6–11).

However, a party can maintain a reasonable expectation of confidentiality with an expert even after that expert's consultation ends. *Koch*, 85 F.3d at 1178 (noting that a "reasonable expectation of confidentiality" may "continue[] after [the expert] was 'discharged'"). Further, confidential information includes not only knowledge of technical information regarding the Accused Products, but also includes "discussion of the [retaining party's] strategies in the litigation, the kinds of experts [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] witnesses to be hired, and anticipated defenses." *Koch*, 85 F.3d at 1182. Accordingly, even if Dr. Akl received some of the same technical confidential information in the intervening Uniloc and Samsung matters, Dr. Akl was still privy to confidential and privileged material regarding litigation strategy from Ericsson's attorneys in the *Minnesota* cases that he would not have had access to in his capacity as an adverse witness in the later cases. The policy objectives of "preventing conflicts of interest and maintaining the integrity of the judicial process" therefore weighs in favor of disqualification in the instant case. *Id.*

Further, the timeframe between the instant case and the *Minnesota* cases does not shift the public interest considerations against disqualification. This Court has previously noted that

disqualification may be warranted where, as here, the closeness of the technology at issue may lead to even inadvertent use of previously disclosed confidential information. *See Mobile Telecomm*, 2015 WL 11117313, at *1 (disqualifying an expert when the consultation in the first case began three years prior to the case at issue and involved the same accused devices).

Finally, "courts have considered whether another expert is available and whether the opposing party had time to hire him or her before trial." *Koch*, 85 F.3d at 1183. Here, the case is still at an early stage with the Claim Construction hearing currently set for March 30, 2022, and the deadline to complete expert discovery set for June 30, 2022—nearly four months away. (Dkt. No. 45 at 3–4). IP Bridge has already retained two other experts in this case and the Court is persuaded that "the risk is too great that [Dr. Akl] would use the information he was given, even if inadvertently, in some manner that would harm [Ericsson]." *Nike v. Adidas Am. Inc.*, No. 9:06-cv-43, 2006 WL 5111106, at *3 (E.D. Tex. Sept. 29, 2006). Thus, IP Bridge's ability, given the available time, to retain a different expert weighs in favor of disqualification.

## IV. CONCLUSION

The Court finds that confidential relationship previously existed between Ericsson and Dr. Akl in which confidential information relevant to the instant case was disclosed. In light of the above and noting that the public interest does not weigh against disqualification, the Court finds that the Motion to disqualify Dr. Akl from further work on behalf of IP Bridge in the instant case should be **GRANTED**. It is **ORDERED** that Dr. Akl is disqualified from acting as a consulting or testifying expert on behalf of IP Bridge in this case and is prohibited from reviewing Ericsson confidential information in support of IP Bridge's infringement claims.

**So ORDERED and SIGNED this 15th day of March, 2022.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE