**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| GODO KAISHA IP BRIDGE 1, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:21-CV-213-JRG |
| | § | (Lead Case) |
| | § | |
| TELEFONAKTIEBOLAGET LM | § | JURY TRIAL DEMANDED |
| ERICSSON and ERICSSON INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| GODO KAISHA IP BRIDGE 1, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:21-CV-215-JRG |
| | § | (Member Case) |
| NOKIA CORPORATION, NOKIA | § | |
| SOLUTIONS AND NETWORKS OY, and | § | JURY TRIAL DEMANDED |
| NOKIA OF AMERICA CORPORATION, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S CLAIM**
**CONSTRUCTION MEMORANDUM AND ORDER**

# TABLE OF CONTENTS

A.  "an OFDM multicarrier signal comprising a first plurality of subcarriers and a second plurality of subcarriers" ('909 patent, Claims 1, 5) .................................... 1

B.  "guard time during which nothing is transmitted" ('594 patent, Claims 1, 13).......... 2

C.  "subframe" ('594 patent, Claims 1, 2, 7, 9, 10, 13).................................................... 3

D.  "a required cyclic shift amount according to a sequence number" ('724 patent, Claims 12, 18); "the required cyclic shift amount is a required cyclic shift amount for a mobile station moving at high speed" ('724 patent, Claim 13) ................................................................................................................................. 3

E.  "the aperiodic channel quality indicator report is multiplexed with data transmitted by the mobile terminal" / "the aperiodic channel quality indicator report is not multiplexed with data transmitted by the mobile terminal" ('239 patent, Claim 14)......................................................................................................... 4

## TABLE OF ABBREVIATIONS

| Abbreviation | Definition |
|---|---|
| Plaintiff or IP Bridge | Plaintiff Godo Kaisha IP Bridge 1 |
| Defendants | Defendants Nokia of America Corporation and Nokia Solutions and Networks Oy and Defendants Telefonaktiebolaget LM Ericsson and Ericsson Inc. |
| '909 patent | U.S. Patent No. 7,372,909 |
| '594 patent | U.S. Patent No. 8,077,594 |
| '724 patent | U.S. Patent No. 8,085,724 |
| '239 patent | U.S. Patent No. 8,385,239 |
| '000 patent | U.S. Patent No. 9,137,000 |
| POSITA | Person of Ordinary Skill in the Art |

Pursuant to Fed. R. Civ. P. 72(a), Defendants respectfully submit the following objections to the Magistrate Judge's Claim Construction Order ("Order") (Dkt. 133). For each term below, the Order erred for the reasons below and the reasons set forth in Defendants' briefing (Dkt. 69) and at the hearing (Dkt. 100, Dkt. 107) (all of which is incorporated by reference). Defendants therefore respectfully object to the Order's construction of each term below.

### A.     "an OFDM multicarrier signal comprising a first plurality of subcarriers and a second plurality of subcarriers" ('909 patent, Claims 1, 5)

The Order incorrectly concluded that the applicant's prosecution history remarks concerning "a TDM system" are "too vague" to meet the "clear and unmistakable" standard for disclaimer. *See id.*at 8. This conclusion is incorrect in light of the Order's acknowledgement that the applicant distinguished the invention over Haugli's TDM system: "the applicant made *two distinctions* relative to Haugli: (1) 'Haugli does not disclose an up-conversion section,' and (2) the new claims emphasize *the difference between the applicant's OFDM radio transmitting apparatus and method and Haugli's 'TDM system*.'" *Id.* at 8 (emphasis added). The Order thus expressly acknowledges that the applicant distinguished Haugli's TDM system to traverse the examiner's rejections.

The Order suggests that the "applicant did *not* argue the new claims were patentable because they did not recite TDM, nor did he suggest that his OFDM system was incompatible with TDM." *Id.* at 8 (emphasis in original). But prosecution disclaimer "*narrows the ordinary meaning* of the claim congruent with the scope of the surrender." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) (emphasis added). In other words, claim scope that would ordinarily fall within the plain meaning of claim language can be disclaimed by "an applicant's argument that a prior art reference is distinguishable on a particular ground." *Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1141 (Fed. Cir. 2021) (internal citations omitted). That is what occurred here. Although TDM signals might ordinarily fall within the scope of the '909 patent's preamble, the applicant disclaimed that scope by distinguishing the preamble from Haugli's TDM signals. And the

"examiner's acceptance of that distinction and resulting decision to allow the claims suggest that [the applicant] and the examiner reached an understanding on that point." *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1374-75 (Fed. Cir. 2022). Thus, claim scope relating to TDM signals was disclaimed by the applicant's arguments regarding Haugli, and the Court should adopt Defendant's proposed construction.

### B.   "guard time during which nothing is transmitted" ('594 patent, Claims 1, 13)

The Order rejected Defendants' position that the disputed phrase is "definitional" (*i.e.*, that it explained the meaning of "guard time" in the claim). In doing so, the Order improperly disregarded Federal Circuit precedent that "claim language defines claim scope." *Meds. Co. v. Hospira, Inc.*, 881 F.3d 1347, 1350 (Fed. Cir. 2018) (citation omitted). "[C]laims are interpreted with an eye toward giving effect to all terms in the claim." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) (citation omitted). Here, the Order itself acknowledges that the "guard time during which nothing is transmitted" was added "for some reason" (Order at 12), so the claim language *should* be ascribed meaning. Yet the Order incorrectly held that the "guard time during which nothing is transmitted" phrase is not "definitional" because "[o]ne would expect definitional language to come near the first use of the term being defined." Order No. 11. This rationale is contrary to the plain language of the claims. The claim expressly states that the SRS "is mapped to a position of a guard time" and then later refers to "*the guard time* during which nothing is transmitted." The latter phrase unquestionably further defines *the* guard time that was introduced earlier in the claims, and thus the claim requires that the same guard time (i) include an SRS and (ii) have nothing transmitted. The Order's holding that the express claim language ("guard time during which nothing is transmitted") is not "definitional" should be overturned.

Once that holding is overturned, the Order's rejection of Defendants' specification- and claim differentiation-based arguments should also be overturned. Both rejections were based on the Order's

incorrect adoption of IP Bridge's arguments regarding the claim language. *See* Order at 12 ("[Defendants'] position . . . depends on accepting that the disputed phrase defines guard time . . . ."); *id.* at 13 ("[C]laim differentiation is not inconsistent with Plaintiff's construction. But even if it were a closer call, "claim differentiation is 'not a hard and fast rule . . . .'").

C.      "subframe" ('594 patent, Claims 1, 2, 7, 9, 10, 13)

The Order erred with respect to the term "subframe." In its Brief, Defendants proffered legal precedent demonstrating that "[e]quating two terms is sufficient to establish lexicography." *See* Dkt. 75 at 9-10 (citing *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1329 (Fed. Cir. 2009); *Integrated Prod. Servs. v. Prod. Control Servs.*, 2013 U.S. Dist. LEXIS 200117, at *47 (S.D. Tex. Apr. 17, 2013)). The Order did not distinguish or address any of that precedent or dispute that the '594 patent specification equates a "subframe" with a 1 millisecond time period in a frame.

D.      "a required cyclic shift amount according to a sequence number" ('724 patent, Claims 12, 18); "the required cyclic shift amount is a required cyclic shift amount for a mobile station moving at high speed" ('724 patent, Claim 13)

The Order erred in declining to hold the "required cyclic shift amount" language indefinite. The disputed phrase recites "a *required* cyclic shift amount *according to a sequence number.*" Here, the claim states that the required cyclic shift amount is according to a sequence number, but (as the Order acknowledges) the specification does not define "required cyclic shift amount" according to a sequence number. *See* Order at 22 n. 6. The patent provides no guidance as to how the "required cyclic shift amount" relates to a "sequence number," so a POSITA would have had to subjectively determine what constitutes a "*required* cyclic shift amount" for a sequence. *See* Dkt. 75 at 16-19; Dkt. 75-2 at ¶¶ 75-80.

The '724 patent's intrinsic record does not "provide objective boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014). The Order relied on Figure 24 as providing objective boundaries. *See* Order at 22. Neither party, however, contended

that Figure 24 provided guidance as to how to interpret the required cyclic shift amount.[1] Moreover, Figure 24 illustrates the relationship between a sequence number (r) and a "***maximum applicable cyclic shift amount*** Δ value." '724 patent at Fig. 24. But the inequality defining the "applicable cyclic shift amount Δ value" has an upper bound defined by the Doppler shift "x," and not the "required cyclic shift amount." '724 patent at 19:34-36. Figure 24 thus fails to relate sequences or sequence numbers with "required cyclic shift amounts," and thus does not provide an objective boundary.

The Order also erred by interpreting "required cyclic shift according to a sequence number" to not require the "required cyclic shift amount" to be "according to a sequence number." Order at 22. The Order concludes that the phrase "according to a sequence number" limits how the sequences are allocated. *Id*. This contradicts both parties' positions: Plaintiff contended that "according to a sequence number" limited how the sequences were indexed while Defendants contended that "according to a sequence number" limited "required cyclic shift amount." Dkt. 69 at 19; Dkt. 75 at 17-18. That the Order, Plaintiff, and Defendants read the same phrase as modifying three different subjects (allocating, indexing, and required cyclic shift amount) further supports indefiniteness.

### E.   "the aperiodic channel quality indicator report is multiplexed with data transmitted by the mobile terminal" / "the aperiodic channel quality indicator report is not multiplexed with data transmitted by the mobile terminal" ('239 patent, Claim 14)

The Order correctly held that plain and ordinary meaning should apply, but incorrectly excluded "control information or control signals" from that meaning. Order at 25. The parties' dispute here was whether "data" should be limited to "user data" and thus exclude control data. The term "data" does not have a special meaning in the art, and a POSITA would have understood the term to have its plain and ordinary meaning, which includes control data and user data (Lanning Decl.

---

[1] IP Bridge relied on Figure 24 to try to craft a definition for "generally," which the Order properly rejected. Dkt. 133 at 20.

at ¶¶ 45-46). Although the Order frames its decision as applying the "plain and ordinary meaning," the Order effectively finds that applicant disclaimed types of data that include control information or signaling. The Order erred because the '239 patent does not include any express disavowal of claim scope. *Retractable Techs. Inc. v. Becton Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011).

As explained in Defendants' *Markman* Brief, the specification discloses embodiments in which "control" and "user" information are *not* distinguished. For example, the specification describes that CQI reports could be multiplexed with Uplink Shared Channel data, where, for example, CQI, PMI, RI, and other control data are sent on the channel ('239 patent at 5:35-37, 6:38-7:40, 9:30-37; Lanning Decl. at ¶ 47). A POSITA would have understood the '239 patent to disclose that this and other information transmitted by the mobile terminal on the Uplink Shared Channel would be considered "data transmitted by the mobile terminal via the UL-SCH" regardless of whether it was explicitly called data or expressly said to be multiplexed (Lanning Decl. at ¶ 47; '239 patent at Cl. 14). The Order did not identify any evidence of a clear intention to limit the claim's scope to exclude control information from data and thus legally erred.

The Order also factually erred by misconstruing the prosecution history. According to the Order, the prosecution history "support[ed]" a "distinction between 'data' and 'control information' by equating 'user data' with 'data to be transmitted via an Uplink Shared Channel (UL-SCH).'" Order at 24. Not so. As explained in Defendants' *Markman* Brief, the applicant **replaced** the "user data" language in the original claims with the "data to be transmitted via an Uplink Shared Channel (UL-SCH)" language in amended claims. Dkt. 75 at 26. Contrary to the Order, the applicant knew how to claim "user data," but didn't. The Order erred by allowing IP Bridge to narrow the claims despite no clear and unmistakable disavowal in the intrinsic record.

Dated: June 28, 2022

/s/ John D. Haynes

John D. Haynes
David S. Frist
Shawn P. Gannon
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
john.haynes@alston.com
david.frist@alston.com
shawn.gannon@alston.com

J. Ravindra Fernando
**ALSTON & BIRD LLP**
One South at The Plaza
Suite 4000
101 South Tryon Street
Charlotte, NC 28280-4000
Phone: 704-444-1000
Fax: 704-444-1111
Ravi.fernando@alston.com

*Counsel for Defendants Nokia of America
Corporation; Nokia Solutions and Networks
OY*

/s/ Warren Lipschitz

Douglas A. Cawley
Texas State Bar No. 04035500
dcawley@McKoolSmith.com
Nicholas Mathews
Texas State Bar No. 24085457
nmathews@McKoolSmith.com
Warren Lipschitz
Texas State Bar No. 24078867
wlipschitz@mckoolsmith.com
Eric Hansen
Texas State Bar No. 24062763
ehansen@mckoolsmith.com
Alexander Chern
Texas State Bar No. 24109718
achern@mckoolsmith.com
Eleanor Hudson Callaway
Texas State Bar No. 24120740
ecallaway@mckoolsmith.com

MCKOOL SMITH, P.C.
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

*ATTORNEYS FOR DEFENDANTS*
*TELEFONAKTIEBOLAGET LM ERICSSON*
*AND ERICSSON INC.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Pursuant to Local Rule CV-5(c), all counsel of record were served a true and correct copy of the foregoing document by electronic mail on June 28, 2022.

Dated: June 28, 2022                                   */s/ John D. Haynes*
                                                       John D. Haynes