**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| GODO KAISHA IP BRIDGE 1, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:21-CV-213-JRG |
| | § | (Lead Case) |
| TELEFONAKTIEBOLAGET LM | § | |
| ERICSSON and ERICSSON INC., | § | JURY TRIAL DEMANDED |
| | § | |
| Defendants. | § | |
| | § | |
| GODO KAISHA IP BRIDGE 1, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:21-CV-215-JRG |
| | § | (Member Case) |
| NOKIA CORPORATION, NOKIA | § | |
| SOLUTIONS AND NETWORKS OY, and | § | JURY TRIAL DEMANDED |
| NOKIA OF AMERICA CORPORATION, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DEFENDANTS' RESPONSE TO IP BRIDGE'S OBJECTIONS
PURSUANT TO RULE 72 TO THE CLAIM CONSTRUCTION ORDER**

## TABLE OF CONTENTS

A.    "a plurality of sequences, which are indexed by the indices having
consecutive numbers in order of generally increasing to a maximum value
and then decreasing, from the maximum value, a required cyclic shift
amount according to a sequence number" ('724 patent, Claims 12 and 18) .............. 1

B.    "the aperiodic channel quality indicator report is multiplexed with data
transmitted by the mobile terminal" / "the aperiodic channel quality indicator
report is not multiplexed with data transmitted by the mobile terminal" ('239
patent, Claim 14)......................................................................................................... 3

## TABLE OF ABBREVIATIONS

| Abbreviation | Definition |
|---|---|
| Plaintiff or IP Bridge | Plaintiff Godo Kaisha IP Bridge 1 |
| Defendants | Defendants Nokia of America Corporation and Nokia Solutions and Networks Oy and Defendants Telefonaktiebolaget LM Ericsson and Ericsson Inc. |
| '909 patent | U.S. Patent No. 7,372,909 |
| '594 patent | U.S. Patent No. 8,077,594 |
| '724 patent | U.S. Patent No. 8,085,724 |
| '239 patent | U.S. Patent No. 8,385,239 |
| '000 patent | U.S. Patent No. 9,137,000 |
| POSITA | Person of Ordinary Skill in the Art |

Pursuant to L.R. CV-72(b), Defendants respectfully submit the following responses to IP Bridge's Objections (Dkt. 142) ("Objections") to the Magistrate Judge's Claim Construction Order (Dkt. 133) ("Order"). As discussed below, the Order properly held the '724 patent's "generally increasing" term to be indefinite. Defendants thus respectfully request that the Court overrule the Objections and adopt the Order's holding. In addition, the Court should disregard IP Bridge's arguments regarding the '239 patent's "data" term because IP Bridge failed to object to any specific finding in the Order. That said, Defendants respectfully request that the Court affirm that the '239 patent's "data" term should receive its plain and ordinary meaning but overturn that the plain and ordinary meaning excludes "control information or control signals."

A.     **"a plurality of sequences, which are indexed by the indices having consecutive numbers in order of generally increasing to a maximum value and then decreasing, from the maximum value, a required cyclic shift amount according to a sequence number" ('724 patent, Claims 12 and 18)**

The Order properly held that the '724 patent's "generally increasing" term is indefinite. The Order first correctly found that this was a "term of degree" that "[n]either party contends . . . has any special meaning to a [POSITA]." *See* Order at 18-19. Based on this, the Order properly consulted the claims, specification, and dictionary definitions. *See* Order at 19-21. Ultimately, however, the Order found that "nothing in the ['724 patent's] disclosure provides context for how a skilled artisan should understand which of" multiple dictionary definitions would apply. *See* Order at 19. The term "generally increasing" would have encompassed many different—and potentially inconsistent— meanings to a POSITA. *See* Order at 19; *see also* Dkt. No. 69-20 (Mahon Decl.) at ¶¶ 62-66, 69-74 (Defendants' expert explaining that the term "generally" in the context of the '724 patent's claims allows an indeterminate number of exceptions to the claimed relationship between index and required cyclic shift amount, leaving the scope of the claim without an objective boundary). The Order therefore correctly concluded that term of degree lacked any objective boundaries and was indefinite. *See* Order at 21; *see also Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014)

(citing *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 911 n.8 (2014)) (interpreting *Nautilus* as "indicating that there is an indefiniteness problem if the claim language might mean several different things and no informed and confident choice is available among the contending definitions") (internal marks omitted).

In its Objections, IP Bridge raises three flawed arguments that should each be rejected.

First, IP Bridge reiterates that a POSITA would have understood Figure 24 to illustrate what was meant by "generally increasing" in the context of the '724 patent. *See* Objections at 1. The Order already considered and (in no uncertain terms) rejected this argument as "pick[ing] an embodiment from the specification, map[ping] it to the claim language, and then treat[ing] it as definitional." Order at 20 n. 4. The Order also correctly observed that IP Bridge's proffered interpretation of the term leads to absurd results. *See* Order at 20 ("Plaintiff's 'construction' of 'generally increasing' . . . would encompass, after an initial increase, *no further increases* in required cyclic shift amount.") (emphasis added). IP Bridge's Objections never dispute this absurd result, nor do they explain how Figure 24's disclosure "illustrates what was meant by 'generally increasing.'" *See* Objections at 1.

Second, IP Bridge wrongly alleges error in the Order's reliance on dictionary definitions. *See* Objections at 1-2. As explained earlier, the Order consulted the claims, specification, *and* dictionary definitions. *See* Order at 19 ("The claims on their face provide no guidance about the scope of the term, and there is no express definition of the term in the specification."); *id.* at 19-21 (rejecting IP Bridge's arguments regarding the '724 patent's Figs. 23 and 24 as "not persuasive"); *id.* at 19 (considering dictionary definitions). This was entirely proper. *See, e.g.*, *Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*, 824 F.3d 999, 1002-03 (Fed. Cir. 2016) ("The ordinary meaning may be determined by reviewing various sources, such as the claims themselves, the specification, the prosecution history, dictionaries, and any other relevant evidence.").

Third, IP Bridge incorrectly faults the Order for mischaracterizing Dr. Mahon's declaration

as summarizing two potential interpretations of the disputed term. *See* Objections at 2. The Order, however, correctly summarized two of the possible interpretations of generally increasing addressed by Dr. Mahon's declaration. Specifically, Dr. Mahon opined that a POSITA could have interpreted "generally increasing" to mean (among other things): (*i*) increasing only for the *most* part (*i.e.*, what the Order summarized as "increasing relative to a prior index *more often* than decreasing relative to a prior index," Order at 19 (emphasis added)); or (*ii*) increasing only some of the time (*i.e.*, what the Order summarized as "increasing on average over the number of indices," Order at 19). *See* Dkt. No. 69-20 at ¶¶ 64-66. Notably, Dr. Mahon provided additional examples to illustrate the ambiguity of "generally increasing," such as the "Random Values" graphs. *See id.* at ¶¶ 69-73. As Dr. Mahon explained, those graphs illustrate minimum and maximum values that are separated by a series of increasing and decreasing values. *See id.* In both examples, the peaks of the graph do not uniformly increase, and the valleys of the graph also do not uniformly increase. *See id.* The multiple potential interpretations of "generally increasing" prevent a POSITA from determining with reasonable certainty whether the "Random Values" graphs would be covered by the phrase "generally increasing to a maximum value." *See id.* The Order correctly credited Dr. Mahon's opinions and accordingly concluded that the term "generally increasing" is indefinite.

Thus, for the foregoing reasons, Defendants respectfully request that the Court overrule the Objections and adopt the Order's holding that the "generally increasing" term is indefinite.

**B.    "the aperiodic channel quality indicator report is multiplexed with data transmitted by the mobile terminal" / "the aperiodic channel quality indicator report is not multiplexed with data transmitted by the mobile terminal" ('239 patent, Claim 14)**

As explained in Defendants' Objections (*see* Dkt. 144 at 4-5), the Order correctly held that the '239 patent's "data" term should receive its plain and ordinary meaning, but the Order incorrectly excluded "control information or control signals" from that meaning. Order at 25. Although the Order frames its decision as applying the "plain and ordinary meaning," the Order effectively finds that

applicant disclaimed types of data that include control information or signaling. The Order erred because the '239 patent does not include any express disavowal of claim scope. *Retractable Techs. Inc. v. Becton Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011). The specification discloses embodiments in which "control" and "user" information are *not* distinguished (*see* Dkt. 144 at 5), and the prosecution history establishes that the applicant knew how to claim "user data" to the exclusion of "control data" but opted not to exclude the latter. *See id.* By allowing IP Bridge to narrow the claims despite no clear and unmistakable disavowal in the intrinsic record or any other evidence of a clear intention to limit the claim's scope, the Order legally erred. *See id.* at 4-5.

In its Objections, IP Bridge never explains how "data" can receive its plain and ordinary meaning while simultaneously excluding certain types of signaling and information. In fact, IP Bridge never even objects to the Order's construction at all. Instead, IP Bridge conditionally opposes an argument that may later be made by Defendants. *See* Objection at 2 ("IP Bridge respectfully objects to the Court's construction . . . to the extent that it is later argued that the construction somehow does not exclude control information or control signals.") (emphasis omitted). But "parties filing objections must specifically identify those findings objected to." *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (citation omitted). Failure to do so results in "[f]rivolous, conclusive or general objections [that] need not be considered by the district court." *Id.* Here, IP Bridge has not "specifically identif[ied]" any findings that are objected to in the Order's construction of the '239 patent's "data" term. Thus, the Court need not consider IP Bridge's Objections to the '239 patent's "data" term.

Thus, for the foregoing reasons, Defendants respectfully request that the Court affirm that the '239 patent's "data" term should receive its plain and ordinary meaning but overturn that the plain and ordinary meaning excludes "control information or control signals."

Dated: July 12, 2022

*/s/ John D. Haynes*
John D. Haynes
David S. Frist
Shawn P. Gannon
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
john.haynes@alston.com
david.frist@alston.com
shawn.gannon@alston.com

J. Ravindra Fernando
**ALSTON & BIRD LLP**
One South at The Plaza
Suite 4000
101 South Tryon Street
Charlotte, NC 28280-4000
Phone: 704-444-1000
Fax: 704-444-1111
Ravi.fernando@alston.com

*Counsel for Defendants Nokia of America*
*Corporation; Nokia Solutions and Networks*
*OY*

*/s/ Warren Lipschitz*
Douglas A. Cawley
Texas State Bar No. 04035500
dcawley@McKoolSmith.com
Nicholas Mathews
Texas State Bar No. 24085457
nmathews@McKoolSmith.com
Warren Lipschitz
Texas State Bar No. 24078867
wlipschitz@mckoolsmith.com
Eric Hansen
Texas State Bar No. 24062763
ehansen@mckoolsmith.com
Alexander Chern
Texas State Bar No. 24109718
achern@mckoolsmith.com
Eleanor Hudson Callaway
Texas State Bar No. 24120740
ecallaway@mckoolsmith.com

5

MCKOOL SMITH, P.C.
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

*ATTORNEYS FOR DEFENDANTS*
*TELEFONAKTIEBOLAGET LM ERICSSON*
*AND ERICSSON INC.*

6

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Pursuant to Local Rule CV-5(c), all counsel of record were served a true and correct copy of the foregoing document by electronic mail on July 12, 2022.

Dated: July 12, 2022                                  */s/ John D. Haynes*
                                                                     John D. Haynes