# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **GODO KAISHA IP BRIDGE 1,**<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>**TELEFONAKTIEBOLAGET LM ERICSSON AND ERICSSON INC.,**<br><br>　　　　Defendants. | Civil Action No. 2:21-cv-213<br>(Lead Case)<br><br><br>**JURY TRIAL DEMANDED** |
| **GODO KAISHA IP BRIDGE 1,**<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>**NOKIA CORPORATION, NOKIA SOLUTIONS AND NETWORKS OY, AND NOKIA OF AMERICA CORPORATION,**<br><br>　　　　Defendants. | Civil Action No. 2:21-cv-215<br>(Member Case)<br><br><br>**JURY TRIAL DEMANDED**<br><br>**PUBLIC REDACTED** |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY OF THE '239 PATENT UNDER §§ 102(A), (F), (G)(2)**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................ 1

II. RESPONSE TO IP BRIDGE'S STATEMENT OF ISSUES TO BE DECIDED................... 2

III. RESPONSE TO IP BRIDGE'S STATEMENT OF UNDISPUTED MATERIAL FACTS... 3

    A.    IP Bridge's Statement of Undisputed Material Facts....................................................... 3

    B.    Defendants' Statement of Undisputed Material Facts....................................................... 3

IV. APPLICABLE LAW ........................................................................................................... 7

V. ARGUMENT........................................................................................................................ 8

    A.    Defendants Have Raised a Genuine Issue of Material Fact Sufficient to Show That The Named Inventors Derived the Claimed Inventions of the '239 Patent from Someone Else Pursuant to § 102(f) ........................................................................................................ 9

        1.    Defendants have ample evidence to show that the '239 Patent's claimed inventions were conceived by someone other than Panasonic ................................................................. 9

        2.    Defendants have ample evidence to show that non-named inventors communicated the claimed inventions to the named inventors before the patent was filed ............................... 11

VI. CONCLUSION ................................................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adaptix, Inc. v. Alcatel-Lucent USA, Inc.*,
   No. 6:12-cv22, 2015 WL 12696205 (E.D. Tex. Aug. 7, 2015) .................................................12

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..........................................................................................................7

*Cumberland Pharms. Inc. v. Mylan Institutional LLC*,
   846 F.3d 1213 (Fed. Cir. 2017)..........................................................................................8

*Eaton Corp. v. Rockwell Int'l Corp.*,
   323 F.3d 1332 (Fed. Cir. 2003).........................................................................................13

*F.B. Leopold Co. v. Roberts Filter Mfg. Co.*,
   119 F.3d 15, No. 96-1218, 1997 WL 378004 (Fed. Cir. July 2, 1997) ...................................14

*Gambro Lundia AB v. Baxter Healthcare Corp.*,
   110 F.3d 1573 (Fed. Cir. 1997)....................................................................................8, 13

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*,
   No. 14-CV-1296-JPS, 2017 WL 4570787 (E.D. Wis. Oct. 12, 2017)....................................13

*OddzOn Prod., Inc. v. Just Toys, Inc.*,
   122 F.3d 1396 (Fed. Cir. 1997).........................................................................8, 12, 13, 14

*Onyx Therapeutics, Inc. v. Cipla Ltd.*,
   No. CV 16-988-LPS, 2020 WL 2214443 (D. Del. May 4, 2020), *aff'd,* 839 F.
   App'x 545 (Fed. Cir. 2021) ..............................................................................................13

**Statutes**

35 U.S.C. §§ 102(f)............................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 56(a) ...........................................................................................................7

**I.      INTRODUCTION**

IP Bridge knows it has a problem. U.S. Patent No. 8,385,239 (the "'239 patent") was developed in conjunction with the LTE standard. The patent lists three inventors—all 3GPP participants representing Panasonic at the standard-setting meetings for LTE. For infringement purposes, IP Bridge points to Panasonic's standard contribution story purportedly to show that the patent was incorporated into the standard. But what the story actually demonstrates is that Panasonic's inventors derived the '239 patent from other engineers at the LTE meetings. Indeed, as late as the day they filed for their patent in Europe, Panasonic's inventors were advocating for a different solution at the LTE meeting in Kansas City. Only after discussions with other representatives at this meeting did the inventors reverse course at the standard and in their patent.

The '239 patent is aimed at, among other things, triggering a channel quality indicator ("CQI") report that is multiplexed either with or without data based on three conditions in a downlink signal—i.e., a CQI trigger bit, a specific modulation and coding scheme ("MCS") index value, and a resource block threshold. Defendants' evidence shows that Ericsson's standard representative, George Jöngren, first proposed the idea of triggering these messages based on conditions in the claimed downlink signal. Mr. Jöngren's proposals expressly disclosed using two of the three claimed conditions, and at least implicitly disclosed using the third. Later, Motorola's Robert Love expressly proposed using the claimed combination of all three conditions. Mr. Love also proposed using the specific MCS value of 29 to trigger the CQI-only message. This is exactly what is claimed in the narrowest of the '239 patent claims. Finally, Mr. Love and Mr. Jöngren both circulated their materials to and discussed these ideas with one of the named inventors in Kansas City—including on the night before Panasonic filed its patent application in Europe. Understandably, IP Bridge is doing all it can to prevent the jury from hearing any of this evidence.

1

IP Bridge's first line of defense was to hide Mr. Love's existence from Defendants. Despite knowing of his relevance to the '239 patent, and despite possessing a 2021 declaration he authored as part of a foreign case on a related patent with almost identical claims, IP Bridge chose not to identify Mr. Love on its initial disclosures or produce any relevant materials. Instead, IP Bridge waited until Defendants independently identified Mr. Love as potentially having knowledge on prior art to the '239 patent. Only then, within days of that identification, and with less than a week before the close of fact discovery, did IP Bridge finally produced Mr. Love's foreign declaration.[1]

With the cat out of the bag, IP Bridge now files two motions aimed at Defendants' related theories. Here, IP Bridge attacks Defendants' arguments that the relevant proposals and conversations are invalidating prior art under pre-AIA 35 U.S.C. §§ 102(f). But this statutory provision was drafted to address this exact scenario. Defendants' and their experts have preserved the argument. And they are entitled to make their presentation to the jury based on long-standing Federal Circuit precedent. Accordingly, the Court should deny IP Bridge's motion as to § 102(f).[2]

## II.     RESPONSE TO IP BRIDGE'S STATEMENT OF ISSUES TO BE DECIDED

1. Disputed to the extent that it suggests that Defendants must satisfy a clear and convincing burden at this stage.

2. Disputed. Derivation under § 102(f) does not require evidence that "the entire claimed invention was communicated to the inventors of the '239 Patent." Mot. at 1. As IP Bridge admits, derivation requires only that "the communication contains sufficient detail to enable a skilled artisan to make and operate the patented invention." Mot. at 5.

---

[1] *See* Ex. 1 (Ericsson's Third Amended Initial Disclosures) at 11; Ex. 2 (IP Bridge's May 1, 2022, Production Letter to Nokia-Ericsson); Ex. 3 (Love Decl.).

[2] IP Bridge's motion also addresses whether a single reference, R1-082083, qualifies as a prior publication under § 102(a), and Defendants' § 102(g)(2) argument. Mot. at 1. In the interest of narrowing the parties' disputes, Defendants agree to withdraw these two arguments.

3. Disputed to the extent that it suggests that Defendants must satisfy a clear and convincing burden at this stage.

## III. RESPONSE TO IP BRIDGE'S STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. IP Bridge's Statement of Undisputed Material Facts

Defendants dispute Plaintiff's statement of undisputed material facts as follows:

1-5. Not Disputed.

6. Disputed. As demonstrated below, Defendants have identified sufficient competent evidence that non-named inventors, including at least George Jöngren and Robert Love, possessed the claimed inventions of the '239 patent.

7. Disputed. As demonstrated below, Defendants have identified evidence that at least George Jöngren and Robert Love reduced the claimed inventions of the '239 patent to practice by documenting the claimed invention in 3GPP technical submissions.

### B. Defendants' Statement of Undisputed Material Facts

Defendants additionally identify the following material facts relevant to invalidity of the '239 patent under § 102(f) and/or § 103.

1. On January 9, 2008, Ericsson submitted R1-080363 to the 3GPP LTE working group. Ex. 4 (R1-080363) at 1. Ericsson's George Jöngren drafted the document. R1-080363 discussed the concept of triggering "CQI-only" reports as opposed to CQI reports multiplexed ("piggybacked") with data. *Id.*; Ex. 5 (Love Rep.) at ¶¶ 36-39; Ex. 6 (Proctor Rep.) at ¶¶ A-52 – A-58. R1-080363 proposed methods for signaling requests for CQI-only reports from the base station to the mobile device. *Id.* For example, R1-080363 proposed reserving a codeword in the PDCCH uplink grant message to trigger the CQI-only report, including specifically those bits in the "transport format" part of the control message. *Id.* R1-080363 additionally disclosed a "CQI

3

request bit," and the use of a transport block size threshold as a further condition in determining whether to multiplex a CQI report with data. Ex. 4 (R1-080363) at 1-2.

2. On April 4, 2008, Ericsson submitted R1-081682 to the 3GPP LTE working group. Ex. 4 (R1-080363) at 1. Again, Ericsson's George Jöngren drafted the document. R1-081682 proposed methods for signaling requests for CQI-only reports from the base station to the mobile device. *Id.*; Ex. 5 (Love Rep.) at ¶¶ 40-42; Ex. 6 (Proctor Rep.) at ¶¶ A-59 – A-64. For example, R1-081682 proposed reserving one (MCS index) entry in the TS 36.213 TBS table denoted as "TBS=0." *Id.* R1-081682 discloses that an aperiodic CQI report can be requested by setting the CQI request bit to '1,' and "if in addition 'TBS=0' is signaled," then the aperiodic CQI report request is a request for a CQI-only report. *Id.*

3. On May 2, 2008, Motorola's Robert Love sent an email on the 3GPP WG1 listserv an email thread titled, "E-mail discussion on downlink control signaling." Mr. Love's email followed an email from Ericsson's George Jöngren, in which Mr. Jöngren discussed R1-081682. Ex. 7 (the "Love Email"); Ex. 5 (Love Rep.) at ¶ 50; Ex. 6 (Proctor Rep.) at ¶¶ A-40 – A-43. In his email, Mr. Love proposed to Mr. Jöngren and the rest of the working group that "another way to signal '(TBS,0)' . . . is to toggle the NDI bit and indicate MCS 29." *Id.*

4. On May 5, 2008, Mr. Love and Mr. Jöngren, among others, met and spoke with '239 inventor, Christian Wengerter, to discuss downlink control signaling for CQI-only reporting. Ex. 5 (Love Rep.) at ¶¶ 51-54; Ex. 3 (Love Decl.) at IPB213_0265961; Ex. 8 (Jöngren Dep.) at 66:9-67:7l; Ex. 6 (Proctor Rep.) at ¶¶ A-391. Mr. Love and Mr. Jöngren discussed several approaches to triggering the CQI-only report, including approaches based on signaling of MCS 29 and setting the number of Resource Blocks "RBs" to a low value. *Id.*

5. On May 6, 2008, Mr. Love presented R1-082083 at an 8 AM CDT 3GPP ad hoc meeting in Kansas City. Ex. 9 (Love Dep.) at 145:1-146:18; *see also* Ex. 10 (R1-082107); Ex. 6 (Proctor Rep.) at ¶¶ A-44 – A-51; Ex. 5 (Love Rep.) at ¶ 43. R1-082083 disclosed several ways for signaling requests for CQI-only reports from the base station to the mobile device. Ex. 17 (R1-082083) at 1. For example, R1-082083 proposed signaling a CQI-only request by setting MCS to a specific value (i.e., 29), assigning a low number of resource blocks (i.e., #RB=1), and sending a CQI request bit. *Id.* at 1 (Method 2); *see also* Ex. 9 (Love Dep.) at 53:12-22 (testifying that the "CQI request bit . . . was already agreed to" and that R1-082083 disclosed using the "CQI request bit plus another research block equal to 1 and MCS29" to signal the CQI-only message); *id.* at 100:8-104:5 (testifying that he began drafting R1-082083 as early as 1:30 AM CDT and circulated a draft of the document at 3:40 AM CDT, at which point "all the elements regarding this RB – number of RB equals to 1 and ND toggle and MCS29 were done.").

6. Also at the May 6, 2008, 8 AM CDT, 3GPP WG1 ad hoc meeting, '239 patent inventor, Christian Wengerter presented Panasonic's proposal, R1-081792, later revised to R1-082079. Ex. 10 (R1-082107); Ex. 11 (Wells Opening Rep.) at ¶¶ 258-259. R1-081792 does not mention CQI-only signaling. Ex. 12 (R1-081792) at 3. As a result of the ad hoc meeting, Panasonic revised R1-081792 into R1-082079, which proposed that the base stations signal a CQI-only request by setting MCS to a specific value (MCS29) and sending a CQI request bit. Ex. 13 (R1-082079) at 4, Ex. 11 (Wells Opening Rep.) at ¶¶ 258-259. R1-082079 does not disclose using a resource block assignment as part of the signaling of the CQI-only report. *Id.* Panasonic presented R1-082079 to the full WG1 meeting on May 6, 2008, at which point, "concerns" were "raised." Ex. 11 (Wells Opening Rep.) at ¶ 259; Ex. 14 (R1-082190).

7. Panasonic filed European Pat. App. No. 08008539, the patent application to which the IP Bridge claims priority for the '239 patent, on May 6, 2008, in a German European Patent Office. Ex. 15 (Wells Validity Rep.) at ¶ 239.

8. On May 6, 2008, the German European patent office was open until at least 4:45 PM CET, or 9:45 AM CDT (Kansas City time). *Id*. Moreover, as of May 6, 2008, European patent applications could be submitted via fax machine, and "the date of filing accorded to" such applications "is the date on which the application documents are received at the EPO or the competent national authority, provided the documents comply with the requirements."[3] Thus any compliant application faxed before 11:59 PM CET, or 4:59 PM CDT (Kansas City time) on May 6, 2008, would be accorded that date of receipt. *Id*.

9. On May 9, 2008, Panasonic, Ericsson, and others jointly submitted R1-082190 to the 3GPP LTE working group. Ex. 14 (R1-082190); Ex. 11 (Wells Opening Rep.) at ¶¶ 259-263. R1-82190 proposed that, for "RB allocations smaller than [2-4] RBs signaling MCS_index = 29 in conjunction with a set aperiodic CQI trigger is used to signal CQI-only transmission." *Id*.

10. Defendants' expert, Craig Bishop, has opined that R1-080363, R1-081682, and the Love Email were uploaded to the 3GPP file server and/or disseminated to subscribers of the 3GPP email list by the dates cited above, at which point any members could have located, downloaded, and further distributed the communications. Ex. 16 (Bishop Rep.) at ¶¶ 138, 143, 145.

---

[3] *See* Ex. 18 (https://web.archive.org/web/20071021015803/http://www.european-patent-office.org/legal/_guiapp1/e/ga_c_iii_4.htm (Dated October 21, 2007)); *see also* Ex. 19 (European Patent Guide, "How to Get a European Patent, Guide for Applicants" (Dec. 2007), https://web.archive.org/web/20090218180512/http://documents.epo.org/projects/babylon/eponet.nsf/0/A49F82E7E061B7A9C12573A30057B99A/$File/applicants_guide_part1_12_07_en.pdf, at ¶ 110 (Dated February 18, 2009)).

11. Defendants' expert, Jim Proctor, has demonstrated, on a limitation-by-limitation basis, that the claims of the '239 patent are invalid as obvious over the combination of R1-080363, R1-081682, and the Love Email. Ex. 6 (Proctor Rep.) at A-308 – A-375. Mr. Proctor has additionally opined that the '239 patent claims are invalid under § 102(f) based on R1-080363, R1-081682, the Love Email, and the May 5, 2008, conversations between Panasonic's inventor Christian Wengerter and Mr. Love and Mr. Jöngren. Ex. 6 (Proctor Rep.) at ¶¶ A-383 – A-392.

12. Defendants' expert, Robert Love, has demonstrated, on a limitation-by-limitation basis, that the claims of the '239 patent are invalid as obvious over the combination of R1-080363, R1-081682, and the Love Email. Ex. 5 (Love Rep.) at ¶¶ 55-92. Mr. Love has additionally demonstrated, on a limitation-by-limitation basis, that the '239 patent claims are invalid under § 102(f) based on R1-080363, R1-081682, the Love Email, the May 5, 2008, conversations between Panasonic's inventor Christian Wengerter, himself, and Mr. Jöngren, and R1-082083, the contents of which he presented to Mr. Wengerter at the 8 AM CDT May 6, 2008, meeting. Ex. 5 (Love Rep.) at ¶¶ 43, 55-92; Ex. 9 (Love Dep.) at 145:1-146:18; Ex. 10 (R1-082107).

## IV. APPLICABLE LAW

Summary judgment cannot be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of showing that there is no genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant carries its burden, the non-movant come must forward with facts showing a genuine issue for trial. *Id.* at 250. "The evidence of the non movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. If a reasonable jury could return a verdict for the non-moving party, then the motion must be denied. *Id.* at 255–56.

Under pre-AIA 35 U.S.C. § 102(f), a patentee is not entitled to a patent if "he did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f). "This is a derivation provision, which provides that one may not obtain a patent on that which is obtained from someone else whose possession of the subject matter is inherently 'prior.'" *OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1401 (Fed. Cir. 1997). This provision "invokes the familiar requirement that a challenger asserting this ground show that there was a 'prior conception of the claimed subject matter and communication of the conception' to the named inventor." *Cumberland Pharms. Inc. v. Mylan Institutional LLC*, 846 F.3d 1213, 1218 (Fed. Cir. 2017) (quoting *Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993)). Moreover, the Federal Circuit has found that "subject matter derived from another not only is itself unpatentable to the party who derived it under § 102(f), but, when combined with other prior art, may make a resulting obvious invention unpatentable to that party under a combination of §§ 102(f) and 103." *OddzOn*, 122 F.3d at 1403–04. Furthermore, if the relevant communications "enabled one of ordinary skill in the art to make the patented invention," the claims are invalid under § 102(f). *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1578 (Fed. Cir. 1997).

## V.   ARGUMENT

As demonstrated below, IP Bridge's § 102(f) arguments are based on either an incorrect understanding of the law, or a misrepresentation of the facts of the case. Accordingly, IP Bridge's request for partial summary judgment of no invalidity under § 102(f) should be denied.

### A. Defendants Have Raised a Genuine Issue of Material Fact Sufficient to Show That The Named Inventors Derived the Claimed Inventions of the '239 Patent from Someone Else Pursuant to § 102(f)

#### 1. Defendants have ample evidence to show that the '239 Patent's claimed inventions were conceived by someone other than Panasonic

IP Bridge's primary attack on Defendants' 102(f) defense is that Mr. Love's report and testimony lacks corroboration under a "rule of reason" analysis. Mot. at 10-13. Central to this argument, IP Bridge asserts that Defendants have not identified "any witness" besides Mr. Love "or documentary evidence supporting the conception of the subject matter of the '239 Patent prior to the May 6, 2008, priority date of the '239 Patent." Mot. at 12. This is simply not true.

Defendants have identified a litany of documentary evidence supporting prior conception of the subject matter of the '239 patent by non-named inventors. For example, Defendants' have identified Mr. Jöngren's R1-080363 (dated January 9, 2008) and R1-081682 (dated April 9, 2008) and Mr. Love's May 2, 2008, email in support of its derivation argument. Ex. 6 (Proctor Rep.) at ¶¶ A-383 – A-392; *see also* Ex. 5 (Love Rep.) at ¶¶56-92. As demonstrated by Defendants' experts, these references together disclose every limitation of the '239 patent. Ex. 6 (Proctor Rep.) at A-308 – A-375; *id*. at ¶¶ A-383 – A-392; *see also* 5 (Love Rep.) at ¶¶56-92. Further, both Mr. Love and Mr. Jöngren have testified that they met with Panasonic's inventor, Christian Wengerter, to discuss the claimed features on May 5, 2008. Ex. 5 (Love Rep.) at ¶¶ 51-54; Ex. 3 (Love Decl.) at IPB213_0265961; Ex. 8 (Jöngren Dep.) at 66:9-67:7l. These documents and discussions plainly corroborate Mr. Love's testimony that the entirety of the '239 patent's claims were addressed and understood by at least Mr. Love and Mr. Jöngren before Panasonic applied for its patent on May 6, 2008.

Mr. Love's prior conception is further demonstrated by R1-082083, which IP Bridge completely ignores with respect to § 102(f). With respect to § 102(a), IP Bridge alleges that Mr.

9

Love finalized the text of this document only after the European patent office closed on May 6, 2008. But here, IP Bridge fails to account for the fact that the "content" of this document was both known and presented by Mr. Love at the LTE ad hoc meeting that took place at 8 AM CDT (Kansas City time)—well before Panasonic could have filed its patent—on May 6, 2008.[4] Ex. 9 (Love Dep.) at 145:1-146:18; *see also* Ex. 10 (R1-082107). Furthermore, Mr. Love testified that he began drafting the document as early as 1:30 AM CDT, and circulated a draft of the document at 3:40 AM CDT, at which point "all the elements regarding this RB – number of RB equals to 1 and ND toggle and MCS29 were done." Ex. 9 (Love Dep.) at 100:8-104:5. R1-082083 alone discloses every limitation of the '239 patent. *See* Ex. 6 (Proctor Rep.) at ¶¶ A-166 – A-190; *see also* Ex. 5 (Love Rep.) at ¶¶56-92; *see also* Ex. 9 (Love Dep.) at 53:12-22 (testifying that the "CQI request bit . . . was already agreed to" and that R1-082083 disclosed using the "CQI request bit plus another research block equal to 1 and MCS29" to signal the CQI-only message). Thus—even putting aside the combination of R1-080363, R1-081682, and Mr. Love's May 2, 2008, email—R1-082083 and R1-082107 further corroborate Mr. Love's testimony and at least raise a fact issue as to whether he had prior conception of the claims before Panasonic.[5]

---

[4] On May 6, 2008, the German patent office was open until 4:45 PM CET, or 9:45 AM CDT (Kansas City). Ex. 15 (Wells Validity Rep. at ¶ 239). Further, any patent application submitted before midnight in Germany, or 4:59 PM CDT, would have been accorded a May 6, 2008, date.

[5] Unlike with respect to § 102(a), IP Bridge has not pointed to any § 102(f) case foreclosing reliance on corroborating evidence dated the same day as, or overlapping with, the priority date. Nor has IP Bridge pointed to any case requiring the non-named inventor's conception or communications to have taken place "before *the date* of" the patentee's invention—as opposed to, simply, "before" it. Thus, Defendants § 102(f) defense is properly supported by evidence from prior to, but on the same day as when, Panasonic filed for its patent.

### 2. Defendants have ample evidence to show that non-named inventors communicated the claimed inventions to the named inventors before the patent was filed

IP Bridge next argues that Defendants failed to "cite any documentary evidence" of communication of the invention to the inventors. Again, this is simply not true. There is significant evidence in the record that the features of the Asserted Claims were communicated to the named inventors.

For example, each of R1-080363 (January 9, 2008), R1-081682 (April 9, 2008), and Mr. Love's May 2, 2008, email was circulated to the 3GPP email listserv and/or made available on the 3GPP FTP website before the relevant date. Ex. 16 (Bishop Rep.) at ¶¶ 51-59, 94-101, 112-113. Defendants' expert, Craig Bishop, explained that each of these materials was "uploaded to the 3GPP file server . . . , from where an interested member of the public using reasonable diligence could thereafter have located it, downloaded it, and further distributed it without restriction," and/or was "disseminated to subscribers to the 3GPP RAN WG1 email list." Ex. 16 (Bishop Rep.) at ¶¶ 138, 143, 145. At least one of Panasonic's inventors, Christian Wengerter, attended the meetings where these and related materials were discussed and, accordingly, was a recipient of the relevant communications. *See, e.g.*, Ex. 11 (Wells Opening Rep.) at ¶¶ 256-259. Besides the above, Mr. Love and Mr. Jöngren both testified to discussing the relevant claim limitations with Panasonic's Wengerter on May 5, 2008, the night before Panasonic filed its application. *See* Ex. 8 (Jöngren Dep.) at 66:9-67:7l; Ex. 5 (Love Rep.) at ¶¶ 51-54. Mr. Love even memorialized these conversations in contemporaneous emails he sent to his colleagues. Ex. 3 (Love Decl.) at IPB213_0265961. Finally, Mr. Love presented R1-082083 at the 8 AM CDT May 6, 2008, ad hoc meeting with Panasonic inventor Christian Wengerter present. 9 (Love Dep.) at 145:1-146:18; Ex. 10 (R1-082107).

These materials together disclose the inventions claimed in the '239 patent. *Supra* § B; Ex. 6 (Proctor Rep.) at ¶¶ A-166 – A-190, A-383 – A-392; Ex. 5 (Love Rep.) at ¶¶ 55-92; Ex. 9 (Love Dep.) at 53:12-22, 100:8-104:5. Further, based on Christian Wengerter's presence at the meetings where the written materials were disseminated, and the testimony of Mr. Love and Mr. Jöngren regarding the May 5, 2008, conversations, Defendants have at least raised a fact issue on the existence of the relevant communications. *See Adaptix, Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:12-cv22, 2015 WL 12696205, at *2 (E.D. Tex. Aug. 7, 2015) ("Importantly, circumstantial evidence of 'communication' is sufficient to defeat a motion for summary judgment of no derivation.").

IP Bridge ignores these communications and additionally applies the wrong legal standard. IP Bridge faults Defendants for not identifying a "single, enabling communication" Mot. at 4; *id.* at 13. But IP Bridge's challenge to Defendants' § 102(f) defense runs directly counter to the Federal Circuit's plainly articulated understanding of 35 U.S.C. § 102(f) and its relationship to obviousness under § 103(a). In *OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997), for example, the patent challenger asserted that two confidential design disclosures were prior art under § 102(f), and argued that the claimed invention was obvious over those two disclosures in combination with other prior art. *OddzOn*, 122 F.3d at 1400. The district court found that the two disclosures qualified as § 102(f) subject matter and concluded that they, together, could be combined with other prior art designs for purposes of a challenge to the validity of the patent under § 103. On appeal, the patentee challenged the idea "that subject matter encompassed within § 102(f)" could be prior art for the purposes of an obviousness inquiry. *Id.* at 1401. The Federal Circuit, in turn, took the opportunity "to settle the persistent question whether § 102(f) is a prior art provision for purposes of § 103," and held that "a fair reading of § 103, as amended in 1984, leads to the conclusion that § 102(f) is a prior art provision for purposes of § 103." *Id.* The

12

Federal Circuit then made clear that "subject matter derived from another not only is itself unpatentable to the party who derived it under § 102(f), but, when combined with other prior art, may make a resulting obvious invention unpatentable to that party under a combination of §§ 102(f) and 103." *Id.* at 1403-04. Multiple district courts have followed suit. *See, e.g., Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, No. 14-CV-1296-JPS, 2017 WL 4570787, at *3 (E.D. Wis. Oct. 12, 2017) ("The text of Section 103(a) confirms that even if certain prior art references fall short of invalidating a patent when considered under the relevant subsection of Section 102, they nevertheless can be used to make out an obviousness challenge."); *Onyx Therapeutics, Inc. v. Cipla Ltd.*, No. CV 16-988-LPS, 2020 WL 2214443, at *32 (D. Del. May 4, 2020) ("Prior art under § 102(f) can be used to show obviousness"), *aff'd,* 839 F. App'x 545 (Fed. Cir. 2021).

Despite the above, IP Bridge misleadingly frames the issue, stating that Defendants must show that "the putative prior inventor communicated the conception of the **entirety** of the claimed invention to the named inventor in a single, enabling communication" and arguing that "Defendants . . . cannot show that the named inventors received a **single** communication containing all elements of the claimed invention." Mot. at 4, 13 (emphasis in original). In support, IP Bridge points to three cases, none of which stands for the propositions IP Bridge recites. *Id*. In *Gambro*, for example, the Federal Circuit determined there was insufficient evidence that a communication to the named inventor would have enabled one of ordinary skill in the art to make the patented invention, and reversed the district court's finding of invalidity based on derivation. *Gambro*, 110 F.3d at 1578. The Court additionally reviewed a separate finding of obviousness by the district court, but that finding was based on a different set of prior art references that did not include the basis of the derivation defense. *Id.* Thus, the Court was not presented with the issue that was the subject of *OddzOn* and that applies here. Likewise, *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d

13

1332 (Fed. Cir. 2003) says nothing about derivation from multiple sources being improper, nor does it suggest that conception of the "entirety" of the invention must be communicated to the named inventors. Finally, *F.B. Leopold Co. v. Roberts Filter Mfg. Co.*, 119 F.3d 15 (table), No. 96-1218, 1997 WL 378004, at *2 (Fed. Cir. July 2, 1997), is an unpublished table opinion that predates *OddzOn*. To the extent that *F.B. Leopold* suggests any § 102(f) rule that is inconsistent with *OddzOn*, *OddzOn* controls.

Here, Mr. Proctor and Mr. Love both opine that the '239 patent claims are invalid based on a combination of R1-080363, R1-081682, Mr. Love's email on May 2, 2008, and the May 5, 2008, conversations between Panasonic's inventor Christian Wengerter and Mr. Love and Mr. Jöngren. Ex. 6 (Proctor Rep.) at ¶¶ A-383 – A-392; Ex. 5 (Love Rep.) at ¶¶ 55-92. For his § 102(f) analysis, Mr. Love additionally points to the disclosures in R1-082083, the contents of which he presented to Mr. Wengerter at the 8 AM CDT May 6, 2008, meeting. Ex. 5 (Love Rep.) at ¶¶ 43, 55-92; Ex. 9 (Love Dep.) at 145:1-146:18; Ex. 10 (R1-082107). Defendants have further identified both direct and indirect evidence that these materials were communicated to Panasonic's inventors before the '239 parent patent was filed. Under *OddzOn*, Defendants' § 102(f) defense is legally proper. And because Defendants have identified genuine issues of material fact, Defendants are entitled to make their § 102(f) arguments to the jury.

## VI.   CONCLUSION

The Court should deny IP Bridge's motion for partial summary judgment of no invalidity under 35 U.S.C. § 102(f).

14

| | |
|---|---|
| Dated: July 21, 2022 | **MCKOOL SMITH, P.C.** |
| Kevin Hess<br>Texas State Bar No. 24087717<br>khess@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>303 Colorado Street, Suite 2100<br>Austin, Texas 78701<br>Telephone: (512) 692-8700<br>Telecopier: (512) 692-8744 | /s/ *Nicholas Mathews*<br>Douglas A. Cawley<br>Texas State Bar No. 04035500<br>dcawley@McKoolSmith.com<br>Nicholas Mathews<br>Texas State Bar No. 24085457<br>nmathews@McKoolSmith.com<br>Warren Lipschitz<br>Texas State Bar No. 24078867<br>wlipschitz@mckoolsmith.com<br>Eric Hansen<br>Texas State Bar No. 24062763<br>ehansen@mckoolsmith.com<br>Alexander Chern<br>Texas State Bar No. 24109718<br>achern@mckoolsmith.com<br>Eleanor Hudson Callaway<br>Texas State Bar No. 24120740<br>ecallaway@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>300 Crescent Court Suite 1500<br>Dallas, TX 75201<br>Telephone: (214) 978-4000<br>Telecopier: (214) 978-4044 |
| Samuel F. Baxter<br>Texas State Bar No. 01938000<br>sbaxter@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>104 East Houston Street, Suite 300<br>Marshall, TX 75670<br>Telephone: (903) 923-9000<br>Telecopier: (903) 923-9099 | |
| | **ATTORNEYS FOR DEFENDANTS TELEFONAKTIEBOLAGET LM ERICSSON AND ERICSSON INC.** |
| | /s/ *David S. Frist*<br>John D. Haynes<br>David S. Frist<br>Siraj Abhyankar<br>Shawn P. Gannon<br>**ALSTON & BIRD LLP**<br>One Atlantic Center<br>1201 West Peachtree Street, Suite 4900<br>Atlanta, GA 30309<br>Telephone: (404) 881-7000<br>Facsimile: (404) 881-7777<br>john.haynes@alston.com<br>david.frist@alston.com<br>shri.abhyankar@alston.com<br>shawn.gannon@alston.com |

15

        J. Ravindra Fernando
        **ALSTON & BIRD LLP**
        One South at The Plaza
        Suite 4000
        101 South Tryon Street
        Charlotte, NC 28280-4000
        Phone: 704-444-1000
        Fax: 704-444-1111
        Ravi.fernando@alston.com

        *Counsel for Defendants Nokia of America Corporation; Nokia Solutions and Networks OY*

██████████████████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on July 21, 2022.

*/s/ Nicholas Mathews*
Nicholas Mathews

████████████████████████████████████████

████████████████████████████████████████████

█████████████████████

*/s/ Nicholas Mathews*
Nicholas Mathews

17